IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|         Plaintiff, ) | |
| ) | CASE NO. 21-00120-01-CR-W-HFS |
| VS ) | |
| ) | |
| JASON M. POTTER ) | |
| ) | |
|         Defendant. ) | |

## MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS IN SUPPORT

COMES NOW undersigned counsel, Lisa G. Nouri and files this motion on behalf of the defendant pursuant to Rules 12, 41 and 47, F.R.Cr.P, and moves to suppress all evidence, and testimony related to such evidence, obtained as a result of the search and seizure of Mr. Potter's vehicle, on July 15, 2020. The search and seizure of Mr. Potter's vehicle violated his rights under the Fourth Amendment of the United States Constitution.

> **ISSUE:** Officers of the Lee's Summit Police Department lacked probable cause to search Potter's vehicle finding alleged controlled substances, U.S. currency, cell phone, paraphernalia, paperwork and other items of evidence on July 15, 2020 and subsequent towing post search.

1. On May 20, 2021, a criminal Indictment was filed in the Western District of Missouri charging that the Defendant, along with his co-defendant Daniel Dryden between on or about May 11, 2020 and July 15, 2020, the exact dates unknown to the Grand Jury, within the Western District of Missouri and other places, did knowingly and intentionally combine, conspire, confederate and agree with each other,

and others, both known and unknown to the Grand Jury, to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841 (a)(1), (b)(1)(A) and 846; and that on or about July 15, 2020, defendants Potter and Dryden knowingly and intentionally possessed with intent to distribute 500 grams and more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841 (a)(1), (b)(1)(A). In addition to the charged counts, there is a forfeiture allegation in the Indictment. (doc. 1).

2. On July 15, 2020, the Defendant was a passenger in his own vehicle, a 2009 black Nissan Maxima MO license ZC3A0L, being driven by co-defendant Dryden. The car had been parked at America's Best Value Inn (1020 SE Blue Pkwy) in Lee's Summit, Missouri. Lee's Summit Police Department Crime Reduction Team (CRT) were conducting surveillance at the motel after receiving information that drug activity was occurring at the business and numerous stolen vehicles had been frequenting the area. A computer check of the vehicle came back to Jason M. Potter and Potter had a no bond parole warrant out of Kansas City.

3. Officers identified Potter when he walked out of the rear of the business and toward his parked vehicle. Potter placed two bags (a black computer case and a blue Walmart cloth shopping bag) in the passenger rear side of the vehicle and went back into the business. The driver (later identified as Dryden) pulled the vehicle to the front of the business near the lobby doors. Potter subsequently came out of the back of the business

and was carrying a brown bank bag. Potter got into the front passenger seat, and the vehicle left the parking lot, westbound on Blue Parkway.

    4. Officers stopped the vehicle in the area of Blue Parkway and 291 Highway. Once stopped, contact was made with Potter, and the warrant was confirmed. Potter was later arrested and transported to the Lee's Summit Jail. He was booked for the warrant, placed on a twenty four hour hold and subsequently released. An inventory search of Potter's vehicle was conducted at the scene and it was eventually towed. The inventory search of the vehicle and the black computer bag contained drug related items:

Large baggy of meth 182 grams (as packaged)

Large baggy of meth 249.45 grams (as packaged)

Large baggy of meth 179.50 grams (as packaged)

Large baggy of meth 66.25 grams (as packaged)

Baggy of Marijuana 4.4 grams (as packaged)

Blotter paper with suspected LSD

1 Alprazolam prescription pill (in zip style baggy)

9 Hydrocodone prescriptions pill (in zip style baggy)

25 broken Alprazolam prescription pills (in zip style baggy)

2 digital scales with testing weights

Small scoop

Small zip style baggies

2 separate rolls of cash and a money bag and a money bag Potter had been observed carrying to his vehicle containing cash totaling $3571

1 cell phone (TCL Tracfone)

1 key fob belonging to Potter's vehicale

1 gallon size Ziploc baggy containing Methamphetamine remnants

2 address books with Potter's name written inside one of them

Various other items including lottery tickets, phone charger

      5. The illegally seized items were brought back to the station for processing and field tested positive for methamphetamine. The officer eventually went to speak with Potter and Potter declined unless he could have his cell phone. Potter was later released from the twenty four hour hold pending further investigation.

      6. While law enforcement were at the vehicle, an unknown white male had shown up and said he was there to pick up the vehicle. Officer David Smith states in his report that law enforcement had waited approximately thirty minutes, before calling the tow truck, and had already searched the vehicle. The drug items and other contraband had already been located and seized prior to the unknown white male arriving to retrieve the vehicle.

      7. Dryden, the driver was not allowed to drive the vehicle away from the scene when it was revealed he had a suspended license. Officers allege they waited a further 10 minutes after Potter was transported to detention before ordering a police tow at 1435 hours claiming to have waited 28 minutes since Dryden left on foot toward the motel to find another person to retrieve the vehicle. A google map search purportedly showed an average person could walk six minutes to the motel, make contact with a driver, and walk back making approximately a 15-17 minutes time span per the police report.

      8. It should be noted the decision to conduct an inventory search had already been completed before the unknown white male had arrived. The decision to conduct an in-

ventory search was made approximately 28 minutes after Potter was physically arrested. During the inventory search, alleged evidence of illegal activity was found and seized.

9. On July 15, 2020, Potter was on private property at the motel and had a no bond warrant for his arrest. Officers chose not to arrest Potter until after he had exited the motel, re-entered the motel, exited again and left as a passenger in his own vehicle. There was ample time and opportunity to arrest Potter at the motel scene but officers chose to wait until the vehicle was off .35 miles down the road per their reports. A vehicle parked at private property cannot be illegally towed by law enforcement nor can it be illegally searched.

10. After the vehicle was stopped a short one-third mile off of private property and Potter removed from the vehicle and arrested and Dryden found to have a suspended license, Potter was asked who could come pick up the vehicle. Potter advised his friend (name and phone number name withheld for privacy reasons) could come pick up the vehicle or the night manager at the motel. The officer indicates in his report that at 1405 hrs and 1406 hrs he attempted to call the friend from his work phone but he only received a voice mail confirming he had the right phone number. Potter requested that law enforcement again call his friend as he did not believe that calls were allegedly made to his friend. At 1423 hrs, another call was made to the friend who did not answer. Potter requested to call his own tow company and was informed that it was not an option because he was under arrest and a contract tow through the city would be the tow company to take custody of the vehicle.

11. Potter was transported from the scene at 1425 hours. A non-consensual search of the vehicle was conducted in which alleged evidence of illegal activity was found and seized.

12. Officers Hunter and Smith purportedly waited until 1435 to order a police tow. Officer Hunter began an inventory search of the vehicle and located the contraband previously listed. The inventory search was completed at 1454 hours and the 1503 hours the vehicle was towed from the scene. In the interim, while waiting for the police tow and after the inventory search, the unidentified white male walked up to the vehicle at 1458 hours wanting to take the vehicle and was told it was being towed prior to the arrival of the tow truck.

13. Officer Andrew Jones of Lee's Summit Police Department reported that:

"PO Hunter and I were in a patrol car, in uniform, waiting in the area as Sgt. Anders and PO Smith drove the America's Best Value Inn in plain clothes and an unmarked PD vehicle to conduct surveillance. While there, PO Smith asked for me to check the license plate ZC3A0L on a black Nissoan Maxima. A check of the license plate revealed it to be registered to (DEF) Jason M. Potter TOD Jeremy Mitchell 105 E 2nd St Braymer, MO. I recognized the vehicle and license plate from previous days of surveillance as being one frequently at the business. I also remembered checking the registered owner for wants/warrants at the time and discovering Jason Potter had a Missouri Probation & Parole District 5B Parole Violation warrant (#1053284) for Domestic Assault 2nd (full US extradition), no bond listed." (Bates page POTT_00037).

**ARGUMENT:**

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. Amend. IV. The Fourth Amendment of the Constitution, however, requires that in order to search a vehicle or residence, a warrant must be issued by a neutral magistrate who determines that there is probable cause to do so. *New York v. Belton*, 453, U.S. 454, 457 (1981); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967). The warrant requirement is "subject only to a few specifically established and well-delineated exceptions". (*Katz* at 357).

The warrantless search exception of the search incident to arrest requires that the arrest be lawful based upon probable cause. When there is no probable cause for the arrest, the search violates the Fourth Amendment. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329 (1959). A search incident to arrest may include a search of containers on the individual's person or in his clothing. *Gufstason v. Florida*, 414 U.S. 260, 94 S.Ct. 488 (1973). Arrests in the home have different requirements than arrests within a vehicle. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969); *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981). A search incident to arrest is justified only by a lawful arrest and is based on concerns for officer safety and the preservation of evidence. There must be a lawful arrest based upon probable cause; the search must be contemporaneous with the arrest; the police must reasonably believe that their safety is at issue or that the vehicle contains evidence of the offense for which the individual is arrested; and the search may only go so far as the "grabbing area" of the individual arrested. *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009).

The automobile exception requires the officer to have probable cause to believe contraband is within the car in order to search the car without a warrant. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066 (1985); *Whren v. United States*, 517 U.S. 806, 116S.Ct. 1769 (1996). The automobile exception is based upon the inherent mobility of vehicles and the lower expectation of privacy. There must be probable cause to believe the vehicle or a container within it contains evidence of a crime or the warrantless search offends against the Fourth Amendment.

The exigent circumstances exception requires the police to act immediately or risk imminent danger to themselves or the public, the destruction of evidence or the escape of a suspect. It requires that the police to have probable cause to believe the suspect committed a crime and probable cause to believe items relating to a crime would be found in the place searched. *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091 (1984); *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684 (1990).

Administrative, regulatory and inventory searches are exceptions to the warrant requirement based upon noncriminal societal concerns such as the safety of school children, employment related concerns, the safety of the general public, or the prevention against later claims of theft. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738 (1987).

The plain view doctrine is a limited exception to the warrant requirement. It requires the police to be lawfully in the place of viewing, and the items seized must be immediately apparent on their face to be contraband or evidence of a crime. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022 (1971). The police must be legally in the place where they have probable cause to believe that the item(s) seized contains evidence of criminal activity. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149 (1987).

The Fourth Amendment prohibits the use of illegally seized evidence in order to promote judicial integrity and deter illegal police conduct. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341 (1914). Evidence seized during an unlawful search, direct and indirect, must be excluded. The "fruit" of an official illegality can come in the form of tangible as well as verbal evidence. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 415 (1963).

Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime. *United States v. Washington*, 109 F.3d 459, 465 8th Cir. 1997). Law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as "law enforcement would not [be] unduly hampered...if the agents...wait[] to obtain more facts before seeking to arrest." *See United States v. Woolbright*, 831 F.2d 1390, 1394 (8th Cir. 1987); *United States v. Everroad*, 704 F.2d 403, 407 (8th Cir. 1983).

Defendant Potter had a valid no bond arrest warrant entitling law enforcement to legally arrest him. The arrest could have been safely secured at the motel prior to his vehicle leaving private property or even prior to Potter entering the vehicle the first time and most certainly the second time. Law enforcement rather than seeking a valid warrant to search Potter's vehicle went around the search warrant requirements by allowing the vehicle to move off private property a mere .35 miles at most. Time would not have been of the essence as the motel had been watched for days and the vehicle had been there for days. Law enforcement could easily have arrested Potter and then sought a warrant from a Judge who would consider all the facts including that the vehicle was parked on private

property. They could have continued surveillance on the vehicle while attempting to obtain a warrant. Law enforcement circumvented a Judge's ability to decide if a warrant was valid. And law enforcement knew that the vehicle belonged to Potter and he had a no bond warrant outstanding.

Even though law enforcement waited until the vehicle was moved from private property to stop the vehicle to detain the passenger Potter, the subsequent arrest of Potter does not allow law enforcement to ignore the protections against warrantless searches.

A traffic stop is a seizure of everyone in the stopped vehicle. D*elaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979). Passengers in an illegally stopped vehicle have standing to object to the stop and may seek to suppress the evidentiary fruits of that illegal seizure under the fruit of the poisonous tree doctrine, as expounded in the line of cases following *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963). The legal issue is the causal relationship between the traffic stop and the discovery of the evidence; whether the evidence found in the car was fruit of the illegal stop. In the instant case, Potter was both the owner and passenger of the vehicle. After the vehicle was stopped, it was determined the driver had a suspended license and yet he was allowed to leave with a warning. The driver ultimately became co-defendant Dryden.

A constitutionally permissible traffic stop can become unlawful, however, "if it is prolonged beyond the time reasonably required to complete" its purpose. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834 (2005). During a traffic stop, an officer may detain the occupants of the vehicle "while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation". *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). The tasks include "ask-

ing for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose". *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005).

There are two instances when an officer may extend or expand the scope of a traffic stop beyond the original justification for the stop. The first is if the encounter becomes consensual, and the second is if the officer develops reasonable suspicion that other criminal activity is afoot. See *Sanchez*, (417 F.3d at 975).

Potter had already been arrested or was being detained and arrested and there was no justification to search the vehicle. Someone a mere at most .35 miles away could arrive from the motel to remove the vehicle back to the private property of the motel. Again law enforcement had both the motel and vehicle under surveillance and had ample opportunity to seek a valid search warrant if it could pass muster.

Only if the constitutional violation was "at least a but-for cause of obtaining the evidence" is suppression of evidence the appropriate remedy. *United States v. Olivera-Mendez,* 484 F.3d 505 at 511 (8th Cir. 2007) citing *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159 (2006) and *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380 (1984). In Potter's case, the warrant may not have even been obtained from a judicial officer as no evidence would have supported the search of the vehicle.

Mo. Rev. Stat. Section 304.155.1(5) requires an officer to give an opportunity to a driver being arrested an opportunity to arrange for a vehicle's timely removal before impounding such property. The entire ruse of allegedly calling Potter's friend to remove the vehicle from an unknown law enforcement phone and not even leaving a message is yet another attempt to override the statute and the Lee's Summit tow policy. Potter also

requested to use his friend, a private tow company, to remove the vehicle and this request was denied. Potter had requested for his friend to take the vehicle from the scene or Potter requested his own tow service to have it removed but law enforcement denied both options claiming on the dash cam video that they could not wait any longer. These statements do not comport with the written reports of the half dozen or so law enforcement officers involved. If the times in the reports are accurate, then the city tow arrived at 1503 hours. This stop occurred after 1349 hours when law enforcement narratives begin with surveillance of the motel and Potter.

The Lee's Summit Police Department General Order 200.21A III.B.1.f. states:
An officer may tow a vehicle within the City Limits of Lee's Summit under the following situations when the operator of the vehicle is taken into custody and at least one of the following conditions exist: (61.4.3b)
The person is unable to arrange for the vehicle's proper and timely removal;
No passengers are present who can legally remove the vehicle with the driver's consent
The vehicle is illegally parked; or,
The vehicle presents a traffic hazard if left in its position. Or,
The vehicle is stopped on private property that does not belong to the operator/owner.

61.4.3b states abandoned vehicle is left unattended and in such a manner that it obstructs the normal movement of traffic or constitutes a hazard to public safety and there is no reasonable indication that the person in control of the vehicle is arranging for its immediate control or removal.

Under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009), once the Defendant was placed into handcuffs for his outstanding warrant, the officers could search his per-

son for officer safety, and the immediate area around the Defendant (wingspan), for evidence of the crime for which he was being arrested. He was arrested purportedly for a no bond violation of a domestic violence warrant. Potter was requested to step outside the vehicle and he complied. Officers did not have the right to search inside the vehicle. At that point, Mo. Rev. Stat. Section 304.155.1 would apply, giving Potter an opportunity to have someone remove his vehicle without the need for an inventory search.

In the instant case, the stop was made to arrest Potter even though this could have been done prior to the vehicle being removed from private property. The search and subsequent seizures were unconstitutional and any and all evidence should be suppressed as fruit of the poisonous tree.

In another case reviewing the district court's denial of a motion to suppress clear error in an inventory search case, *United States v. Taylor*, 636 F.3d 461 (8th Cir. 2011), the Court stated "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval of a judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.'", citing *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408 (1978)( quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967)). That case talks about the narrow exception of a lawfully impounded vehicle, and indicates that the inventory search must be reasonable under the totality of the circumstances. *United States v. Hall*, 497 F.3d 846, 851 (8th Cir. 2007), and may not be "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632 (1990). The inventory search must be conducted according to standardized police procedures. In

that case, the Court found that the police did not comply with Kansas City Police Department procedures. It also rejected the proposition that an impoundment is constitutional solely because KCPD policy allows towing based upon a "belief" that a vehicle contains evidence of a crime. *United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005). The Court reversed the district court's denial of the motion to suppress.

Law enforcement lacked probable cause for a search of Potter's vehicle pursuant to the inventory search exception.

WHEREFORE, Mr. Potter moves this Court for a hearing and an order suppressing all evidence obtained as a result of the illegal search and seizure in violation of Mr. Potter's rights guaranteed by the Fourth, Fifth and Sixth Amendments to the United States Constitution.

Respectfully Submitted,

_____

s/Lisa G. Nouri, #32800
2526 Holmes
KANSAS CITY, MISSOURI 64108
PHONE: (816) 875-0448
FACSIMILE: (816) 416-7110
lisanouri_atty@hotmail.com

**CERTIFICATE OF SERVICE**

The foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Maureen Brackett, Assistant United States Attorney, 400 E. 9th St., Kansas City, MO 64108 on the 13th day of June, 2022.

_____
s/ LISA G. NOURI